E-FILED
Monday, 27 October, 2008 01:47:01 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JOHN C. ELDER et al.,

  Plaintiffs,

  vs.                        No. 08-3102

NEIL WILLIAMSON et al.,

  Defendants

### Merit Review Order

Five plaintiffs have filed a complaint challenging the conditions at Sangamon County Jail. Pursuant to 28 U.S.C. § 1915A(a), the court is required to review the complaint and dismiss any portion thereof that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks money damages from a defendant who is immune from money damages.

*Multi-Plaintiff Litigation*

The plaintiffs appear to seek systemic improvements in the conditions for pretrial detainees at Sangamon County Jail. They cannot pursue a class action *pro se*. "Under [Fed. R. Civ. P.] Rule 23(a)(4), a class representative must fairly and adequately protect the interests of the class. A litigant may bring his own claims to federal court without counsel, but not the claims of others. This is so because the competence of a layman is clearly too limited to allow him to risk the rights of others." *Rowe v. Davis*, 373 F.Supp.2d 822, 828 (N.D. Ind. 2005). The plaintiffs are limited to seeking redress for actual violations of their own constitutional rights. It appears that they are no longer incarcerated at Sangamon County Jail, so it is not clear whether injunctive relief is available. However, that determination is premature.

Another word on multi-plaintiff litigation is in order. The plaintiffs each have to pay their own filing fee, even if they are proceeding jointly. *Boriboune v. Berge*, 391 F.3d 852, 856 (7th Cir. 2004). That filing fee has been assessed, but it appears that two of the plaintiffs still need to make the initial partial payment. Additionally, each plaintiff will be held accountable for the other's claims for purposes of Rule 11 (sanctions) and 28 U.S.C. § 1915(g)(strikes). *Id.* That is, strikes or sanctions assessed against one plaintiff are assessed against the other plaintiffs, even for claims that do not overlap. Lastly, each of the plaintiffs has to sign the complaint, as well as any motion filed with the court seeking action on their common claims. This court cannot coordinate that effort. The reason for this rule is that it would not be fair to presume that what

one plaintiff wants is wanted by all the plaintiffs. In lieu of obtaining signatures on the motion itself, other plaintiffs may join in a motion by filing their own "motion to join" and identifying the motion in which they join. If any plaintiff fails to join in the motion, however, it will be denied on that basis.

*Analysis of Allegations*

To state a claim under federal notice pleading standards, all the Complaint must do is set forth a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Factual allegations are accepted as true and need only give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007), quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007)(other citation omitted). Pro se pleadings are construed liberally. *Haines v. Kerner*, 404 U.S. 519 (1972).

A pretrial detainee's claim falls under the due process clause of the Fourteenth Amendment, rather than under the Eighth Amendment. *Grieveson v. Anderson*, 538 F.3d 763, 771-72 (7th Cir. 2008); *Guzman v. Sheahan*, 495 F.3d 852, 856 (7th Cir.2007). However, that is no cause for optimism by the pretrial detainee, because "there is 'little practical difference between the two standards.'" *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001), *citing Weiss v. Cooley*, 230 F.2d 1027 (7th Cir. 2000); *Grieveson*, 538 F.3d at 772  (though pretrial detainee cannot be "punished," "the inquiry under both provisions of the Constitution is essentially the same."). This is so even though a pretrial detainee is presumed innocent for purposes of his criminal trial.

Like the Eighth Amendment, the plaintiff must pass an objective and subjective test. The deprivation must be sufficiently serious to arise to "punishment," and the defendants must have acted with a "sufficiently culpable state of mind." Id. at 473. Prison conditions do not violate the Constitution unless they "result in the denial of the minimal civilized measure of life's necessities." *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999)(quoted cite omitted). "'[E]xtreme deprivations are required to make out a conditions-of-confinement claim.'" Id., quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The totality of the conditions are examined. *See Demallory v. Cullen*, 855 F.2d 442, 445 (7th Cir.1988).

*Overcrowding*

On intake, Plaintiff Elder[1] had to share a 70 square foot cell with three other pretrial

---

[1] It appears that Plaintiff Elder drafted the complaint, so the court assumes that "I" refers to Plaintiff Elder.

detainees for 72 hours, and had no opportunity to take a shower. After he was classified, he was double-bunked in a cell meant for one inmate, from September 15, 2007 through April 2008. He had to sleep on the concrete and had no privacy. The double-celling caused "constant tension and aggressive tendencies." The plaintiffs, collectively, seek "depopulation" and single cells.

This court knows from other cases by pretrial detainees at Sangamon County Jail that they are provided with mattresses to sleep on the floor and that the "bunk" in the cell is made of concrete, just like the floor. Sleeping on a mattress on the floor generally does not, by itself, offend the Constitution. *See Tesch v. County of Green Lake*, 157 F.3d 465 (7th Cir. 1998)(sleeping on mattress on floor for less than 2 days not severe enough), *citing in approval Powell v. Cook County Jail*, 814 F.Supp. 757, 759 (N.D.Ill.1993)("holding that the Constitution is indifferent as to whether the mattress is on the floor or on the bed"). Further, the double-celling, by itself, generally does not amount to "punishment" of a pretrial detainee. *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)(double-celling pretrial detainees in cell meant for one inmate did not violate due process where cell was 75 square feet, inmates were confined in cell only from 11 pm to 6:30 a.m., and generally stayed in jail 60 days). There is no single-cell requirement in the Constitution. *Bell*, 441 U.S. at 540. The court also knows from other cases by pretrial detainees at Sangamon County Jail that pretrial detainees have access to a dayroom for about 12 hours per day.

These are essentially factual findings, however, that require a developed factual record regarding the duration and severity of conditions experienced by a particular plaintiff. Plaintiff Elder is not bound by factual findings in other cases. Additionally, he alleges serious back problems, as well as three days in a 70 square foot cell with three other pretrial detainees. The court therefore believes dismissal of this claim is premature. At this point, the court construes the general overcrowding claim as being by all the plaintiffs against those defendants who might be inferred to have knowledge and control over the conditions: Williamson, Strayer and Durr.[2]

*Unsanitary Conditions*

The plaintiffs allege unsanitary conditions, particularly with regard to air circulation, the cleaning supplies available, and food handling. At this point, these claims remain in for further development.

---

[2]The court is aware it recently dismissed somewhat similar claims by Shone Foster, *Foster v. Sangamon County Jail*, 07-3202. According to the IDOC website, Foster has been paroled and has not informed the court of his current address. Foster will be directed to show good cause why he should not be dismissed from this case for failure to keep the court informed of his address. If he does show good cause, the court will then need to address the effect of his earlier case on his ability to proceed in this case.

3

*No boiling water/microwave to prepare commissary food items*

The plaintiffs allege that some of the food sold at the commissary requires boiling water or a microwave to prepare, but neither is available. That does not arise to a deprivation serious enough to implicate the Constitution, and, accordingly does not state a claim.

*Religious Diets*

The plaintiffs challenge a blanket policy denying special diets for any reason, including religion. While this arguably states a claim, they do not state that they need a religious diet or that they requested a religious diet but were denied. The allegations do not give fair notice of how the *plaintiffs'* rights to practice their religion by adhering to a specific diet were violated.

*Mail, Books and Newspapers*

Jail officers may open mail in the presence of inmates and pre-trial detainees. *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974). The plaintiffs' challenge to this practice therefore does not state a claim.

The plaintiffs also allege that they are allowed to keep only handwritten letters and typed letters from lawyers. They allege that they are not allowed "computer generated" letters, literature, photos, or news articles. They also allege that they cannot receive books, magazines and/or newspapers from friends, families or publishers. "Prison regulations or practices that affect a prisoner's receipt of non-legal mail . . . implicate First Amendment rights and must be 'reasonably related to legitimate penological interests.'" *Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999), *quoting Thornburgh v. Abbott*, 490 U.S. 401 (1989). This claim remains in for further development. However, reading mail that staff has probable cause to believe contains escape plans, threats of bodily harm or damage, is on its face related to legitimate penological interests. Their facial challenge to this practice thus fails to state a claim. No inference arises of an as-applied challenge: that is, no inference arises that any of plaintiffs' letters were read where such probable cause was lacking. Similarly, the "possibility" that outgoing letters are censored or copied states no claim.

*Housing Pretrial Detainees with Convicted Inmates*

The plaintiffs assert that, because they are presumed innocent, they should not be housed with inmates who have been convicted of crimes. Plaintiff Elder asserts that he was charged with a non-violent offense and should not have been surrounding by inmates convicted or charged with serious felonies.

The plaintiffs do not have a federal right to be kept separate from committed persons. In *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979), the Supreme Court stated:

> A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He has had only a "judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." Gerstein v. Pugh, supra, 420 U.S., at 114, 95 S.Ct., at 863; . . . (other citation omitted). Under such circumstances, the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.

"Wolfish held that pretrial detainees, who like civil committees may be held for security reasons but not punished, may be assigned to prisons and covered by the usual institutional rules, which are designed to assure safety and security." *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003)(persons civilly committed under Sexually Dangerous Persons Act can be held in prison and subjected to prison rules and restrictions); *see also Martin v. Tyson*, 845 F.2d 1451, 1456 (7th Cir. 1988)(affirming summary judgment on pretrial detainee's claim that he "should not be lodged with convicted inmates" where no injury from practice was asserted); *Young v. Monahan*, 2008 WL 182244 *3 (N.D. Ill. 2008)(dismissing for failure to state a claim challenge to "co-mingling" of detainees and persons committed as sexually violent persons); *Lieberman v. Budz*, 2007 WL 1810493 *10 (N.D. Ill. 2007)(In the absence of any allegation that a constitutional right was infringed on account of the housing assignments, Plaintiff has no viable cause of action regarding the commingling of pretrial and adjudicated civil detainees."). Thus, the practice of housing pretrial detainees with convicted inmates does not, by itself, violate a pretrial detainee's constitutional rights. Nor does the Constitution bar housing one charged with a non-violent felony with those charged or convicted of violent felonies.

*Privacy: Tours, Female Guards and Strip Searches*

The plaintiffs' allegations regarding monitoring by female guards fails to state a claim. *See Johnson v. Phelan*, 69 F.3d 144, 145 (7th Cir. 1995)(upholding dismissal of claim alleging monitoring by female guards of naked male inmates).

The plaintiffs, however, also allege that tour groups are allowed to view inmates taking showers. Though it is not clear whether this happened to any of the named plaintiffs, the court will leave this claim in for further development.

Additionally, the plaintiffs seem to be challenging strip searches of pretrial detainees, allegedly often conducted in the presence of other inmates. Again, it is not clear if the plaintiffs were strip searched, but the claim remains in for further development. *See Thompson v. County*

5

*of Cook*, 428 F.Supp.2d 807, 812 (N.D. Il. 2006)("a number of circuit courts, including the Seventh, have held that not all strip searches on pretrial detainees pass constitutional muster.").

   *Practice of Religion*

The plaintiffs are entitled to practice "insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy*, 907 F2d 46, 47 (7th Cir. 1990). Additionally, the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. Section 2000cc-1(a) et seq., provides that "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . [unless the burden] . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

The plaintiffs allege that the Jail does not follow its own rules, which state that religious services are provided every weekend and allow contact visits for baptisms and also allow religious diets. The Jail's violation of its own rules, however, does not violate the Constitution.

The plaintiffs allege that they are not allowed to receive any religious materials by mail and the Jail has only a Bible. Plaintiff Elder alleges that he has been denied requested religious materials. While the plaintiffs cannot pursue violations on behalf of others, they may pursue this claim to the extent that *their* rights to practice their religion(s) were violated.

   *Access to the Courts*

An access to the courts claim only arises if the plaintiff suffered "actual injury" from the inability to pursue a nonfrivolous claim. *Lewis v. Casey*, 116 S.Ct. 2174, 2179-80 (1996); *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000); *Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir. 1998)(actual injury occurs when plaintiff blocked from litigating a nonfrivolous case). "[T]o state a right to access-to-courts claim and avoid dismissal under Rule 12(b)(6), a prisoner must make specific allegations as to the prejudice suffered because of the defendants' alleged conduct. *Ortloff v. United States*, 335 F.3d 652, 656 (7th Cir. 2003)(general allegations that destruction of legal papers prejudiced pending lawsuits did not state a claim).

The plaintiffs allege that their access to legal materials is insufficient, but they make no allegations that might suggest that they suffered an "actual injury" from the inability to pursue a claim in court. Accordingly, this claim will be dismissed.

The plaintiffs allege generally that phone calls with attorneys are recorded and that prisoners are denied access to the phone to call their public defenders because public defenders do not take collect calls. They also assert that pretrial detainees do not get to see court-appointed counsel until five minutes before their court date. No inference arises, however, that any of

their phone conversations were recorded or that their access to their attorney somehow hurt their criminal cases. Additionally, the Jail is not responsible for a public defender's decision not to take collect calls.

*Grievance Policy*

There is no substantive constitutional right to a grievance procedure. *Grieveson v. Anderson,* 538 F.3d 763 (7th Cir. 2008); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)(state's grievance procedures do not give rise to liberty interest). Accordingly, the allegations about the sham grievance procedures do not state a claim.

*Discipline*

The plaintiffs allege that persons are disciplined without notice of the charges against them, and that the jail policies are not distributed, making it impossible for those policies to be questioned. No inference arises, however, that the plaintiffs themselves were disciplined for a rule infraction without sufficient notice–the allegations are too vague to give notice of any procedural due process claim.

*Confiscation of Property*

The plaintiffs allege vaguely that property is wrongfully confiscated or "disappears." The intentional, unauthorized deprivation of personal property does not amount to a constitutional violation if there is an adequate state post-deprivation remedy available. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194 (1984); *see also Parratt v. Taylor*, 451 US 527 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986); *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999), *cert. denied* 529 U.S. 1134 (2000). The State of Illinois provides an adequate post-deprivation remedy in the Illinois Court of Claims. *See Stewart v. McGinnis*, 5 F.3d 1031 (7th Cir. 1993). Accordingly, this claim must be dismissed.

*Medical Treatment: Plaintiff Elder*

Elder alleges that he has acid reflux disease, which requires a vegetarian diet, and degenerative disk disease, which requires an extra mat. He eventually received a purported vegetarian diet, but it is not sufficient and is too spicy, which aggravated his acid reflux. Defendant Woodberry, a nurse, refused his requests for an adequate diet that would not exacerbate his acid reflux. Defendant Woodberry, along with Drs. Cullinan and Shah, denied Elder a second mat, which he needed for his degenerative disk disease. Sleeping on the concrete has caused extreme pain because of the disk disease.

A pretrial detainee must show that "(1) an objectively serious injury or medical need was deprived; and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it." Chapman, 241 F.3d at 845; Chavez, 207 F.3d. at 904. The court concludes that Plaintiff Elder has stated a constitutional claim regarding denial of a medically necessary diet and additional mat for his acid reflux and degenerative disk disease respectively. Elder's description of his pain allows an inference of a serious medical need, and the relatively low cost of alleviation allows an inference of deliberate indifference.

Elder also alleges that, on December 22, 2007, he experienced severe pain in the area of his left testicle and abdomen, which lasted for six hours. For four days, the pain was intense and sporadic. Yet on December 26, 2007, Dr. Shah only looked at the area for 30 seconds, asked no questions, and pronounced that nothing was wrong.

Pain can constitute a serious medical need needing treatment. A reasonable inference also arises from Elder's description that the pain was indicative of a serious medical need. At this stage, that is sufficient to infer a constitutional violation.

Elder states no claim for the failure to provide "immediate remedy . . . for a headache, common cold, or stomach issues." This is too vague and does not allow an inference that Elder suffered from any serious illness or pain needing medical treatment. *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir.1996)(refusal to "dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue-the sorts of ailments for which many people who are not in prison do not seek medical attention-does not ... violate the Constitution."

Additionally, defendants Matticks and Brauer are not implicated in the claims proceeding, so they will be dismissed.

*FOIA Request: Plaintiff Elder*

Plaintiff Elder asserts that his request for his medical records under the Illinois Freedom of Information Act was denied. He must follow the statutory procedures for appealing that denial, *See* 5 ILCS 140/9-11. In any event, the court would decline supplemental jurisdiction over this state claim, which is not "so related" to the proceeding claims that it "form[s] part of the same case or controversy." 28 U.S.C. § 1367(a). Elder should be able to obtain his medical records through discovery requests to the defendants in this case, as they are relevant to his medical claims.

IT IS THEREFORE ORDERED:

1) Pursuant to its merit review of the complaint under 28 U.S.C. Section 1915A, the court finds that the plaintiff states the following claims based on the Fourteenth Amendment to

the U.S. Constitution:

    a) As to all the plaintiffs and against defendants Williamson, Strayer and Durr:

        1)     overcrowding in cells

        2)     unsanitary conditions

        3)     ban on receipt of computerized letters, pictures, articles and the like, as well as ban on books, magazines and/or newpapers from friends, family or publishers

        4)     tour groups' viewing of inmates taking showers

        5)     strip searches of pretrial detainees

        6)     right to practice religion (construed as a claim under RLUIPA as well as a First Amendment claim)

    b) As to Plaintiff Elder only:

        1)     medical needs regarding acid reflux disease and degenerative disk disease: against defendants Woodberry, Cullinan, and Shah.

        2)     medical needs regarding testicle and stomach pain: against Dr. Shah

2)     Defendants Brauer and Matticks are dismissed, without prejudice, for failure to state a claim against them.

3)     Plaintiff Elder's claim based on the Illinois Freedom of Information Act is dismissed without prejudice.

4)     All other claims are dismissed for failure to state a claim. This case proceeds only on the claims identified in paragraph (1) above.

5)     According to the docket, initial prepayments have not yet been received for Plaintiffs Elder or Foster. The clerk is directed to assess the initial filing fee against Plaintiff Elder and send the assessment to his current place of incarceration for payment. Foster is apparently out of prison.

9

6)     After Elder's initial partial payment is made, this case shall be referred to the Magistrate Judge for entry of a Prisoner Scheduling Order.

7)     By November 7, 2008, Plaintiff Foster is directed to show good cause why he should not be dismissed as a plaintiff for failure to keep the court apprised of his current address.

8)     The defendants shall file an <u>answer</u> within the time prescribed by Local Rule. A motion to dismiss is not an answer. The answer must be considered a responsive pleading under Federal Rule of Civil Procedure 15(a) and should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Case Management Order.

Entered this <u> 27th </u> Day of<u> October</u>, 2008.

                                                     **s\Harold A. Baker**

                                                    HAROLD A. BAKER
                                          UNITED STATES DISTRICT JUDGE